MILE ROAD CORP. *vs.* CITY OF BOSTON.

Suffolk.    January 9, 1963. — February 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Dump. Constitutional Law,* Dump, Police power, Due process of law. *Public Health. Statute,* Construction. *Boston. Permit. Words,* "Trash," "Refuse."

The words "trash" and "refuse" in St. 1962, c. 583, enacted during a time of extensive demolition in Boston and directing the city to prohibit the dumping of "trash or refuse" in a designated area, are not limited to "waste material that is combustible or putrescible," but are synonymous and have a meaning roughly the equivalent of "waste," "rubbish," or "debris"; the statute commands absolute prohibition of dumping. [382–383]

St. 1962, c. 583, directing Boston to prohibit the dumping of trash or refuse in a designated area, was not shown in a suit against the city to be an unconstitutional exercise of the police power as applied to the plaintiff, a corporation which owned and operated a private dump in part of such area and had a large and substantial investment in it and would be put out of business as a dump operator without compensation by enforcement of the statute, where the record did not disclose that the statute had no substantial relation to the objects of the police power or that the plaintiff would be deprived of all use of its land. [380, 383]

Mile Road Corp. *v.* Boston.

A revocable permit under an ordinance of Boston from its health commissioner to the owner of land to dump thereon and an assignment of the land by the board of health as a dump under G. L. c. 111, § 150A; St. 1955, c. 310, § 2, were not vested property rights immune from prospective governmental action and were abrogated by St. 1962, c. 583, directing the city to prohibit dumping on that land. [384]

BILL IN EQUITY filed in the Superior Court on July 19, 1962.

The suit was reported without decision by *Tomasello, J.*

*Maurice Caro (Edward M. Dangel & Leo E. Sherry* with him) for the plaintiff.

*William H. Kerr* for the defendant.

WILKINS, C.J.   This bill under G. L. c. 231A seeking a binding declaration as to the constitutionality of St. 1962, c. 583, entitled, ''An Act prohibiting the dumping of refuse or trash in a certain section of the Dorchester district of the city of Boston,'' is here on a report without decision by a judge of the Superior Court.   The facts alleged in the bill and admitted in the answer are given, by stipulation, the effect of a case stated.   Notice pursuant to G. L. c. 231A, § 8, was given to the Attorney General, who filed an affidavit of receipt of notice, but took no other action.

The statute in its entirety reads: ''The city of Boston is hereby authorized and directed to prohibit the dumping of trash or refuse on land located in the Dorchester district in the area commonly called the Calf pasture, Mile road and Columbia point, said land being east and west of Mount Vernon street and east of Morrissey boulevard.''

The plaintiff, under a deed dated March 1, 1962, duly recorded, is ''the owner of a large and valuable tract of vacant land (the locus) containing approximately 4,000,000 square feet'' which is within the area described in the statute. Although the record is not precise in this respect, an inspection of exhibits reveals that the plaintiff's land, large as it is, is but a small part of the total area affected.   No charge of spot zoning, therefore, can soundly be made, wholly apart from the inappropriateness of the phrase as applied to the Legislature.   See *Marblehead* v. *Rosenthal,* 316 Mass. 124, 126.

For the purposes of the Boston Zoning Act, St. 1924, c. 488, the locus is in an industrial district, but its use as a dumping ground is a nonconforming use until April 1, 1986. For many years before 1933 and at all times since, ordinances of the city have prescribed that "No person shall place or keep any refuse or noxious or decaying liquid or solid matter, except house-offal, in any building or in any waters or on any land, except in accordance with a permit from the health commissioner"; and that "No person shall deposit or dump any house-dirt, house-offal, or other refuse matter, except in a place approved by the health commissioner." Beginning in 1933, the health commissioner has granted annual permits to dump refuse on the locus to the respective owners, including the plaintiff, all of whom, pursuant to such permits, have operated and maintained a private dump. The permit contains the statement, "It is understood and agreed that this permit may be revoked or restricted at any time by the health commissioner and his decision in the matter shall be final."

When the plaintiff acquired title, it became vested in fee with a parcel of land deemed, pursuant to St. 1955, c. 310, § 2, to have been assigned as a dumping ground for garbage, rubbish, or other refuse, under G. L. c. 111, § 150A (inserted by St. 1955, c. 310, § 1). Such assignment, apart from how it may have been affected by St. 1962, c. 583, if constitutional, has not been rescinded, suspended, or modified except by a communication dated April 12, 1962, from the State Department of Public Health, which no one argues is presently material. The plaintiff has been issued a permit to make fires in the open air. St. 1943, c. 355. The plaintiff has a large and substantial investment in the dump, and enforcement of St. 1962, c. 583, will put the plaintiff out of business without compensation.

The existence and maintenance of local dumps is a public necessity for the inhabitants of each municipality. The enforcement of c. 583 will cause great hardship to the city as to its sanitation needs and demolition requirements in that there is no other area within the city which is available for

dumping, ''a vital need at the present time because of the extensive demolition going on in the city limits.'' These public considerations are without consequence in the case at bar. The issue is whether St. 1962, c. 583, is unconstitutional as applied to the plaintiff. *Massachusetts Commn. Against Discrimination* v. *Colangelo,* 344 Mass. 387, 390, and cases cited.

''One assailing a statute on constitutional grounds has the burden of proving the absence of any conceivable grounds upon which the statute may be supported.'' *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301, 305. *Commonwealth* v. *Chamberlain,* 343 Mass. 49, 51–52. The decision as to what measures are necessary for the preservation of life, health, and morals is in the first place a matter for the Legislature, and every presumption must be made in favor of the validity of statutes enacted to further those objectives. *Paquette* v. *Fall River,* 338 Mass. 368, 376. ''If the question is fairly debatable, courts cannot substitute their judgment for that of the Legislature.'' *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 139. *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 700.

The question is not, as stated by the plaintiff, whether the record affirmatively shows that the legislative restriction bears a substantial relation to the public health, safety, morals, or general welfare. Nor is the absence of a preamble to St. 1962, c. 583, of significance. See *Milk Control Bd.* v. *Gosselin's Dairy, Inc.* 301 Mass. 174, 179–180. On the other hand, we cannot accept an argument of the defendant that the statute must be construed as limited to ''waste material that is combustible or putrescible.'' These words do not appear in any statute or case which the defendant cites. The details of the argument are that, as stated in *Kenney* v. *Building Commr. of Melrose,* 315 Mass. 291, 295, ''A general term in a statute or ordinance takes meaning from the setting in which it is employed''; and that the statute, being in derogation of the common law, is to be strictly construed, citing *Corcoran* v. *S. S. Kresge Co.*

313 Mass. 299, 303. Hence, the view is projected that "refuse" must be read in conjunction with "trash" which precedes it in the body of the statute.[1] Even upon this assumption the defendant's theory is not advanced. We think that the words "trash" and "refuse" are synonymous and share a meaning which is roughly the equivalent of "waste," "rubbish," or "debris." See *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 285. Compare *Haley* v. *Boston,* 191 Mass. 291, 293.

A statute, of course, must be construed, if possible, to avoid serious constitutional doubts. *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701. *Opinion of the Justices,* 341 Mass. 760, 785. This principle, however, does not authorize the judiciary to supply qualifying words not fairly to be imported from the actual language of the statute. The brevity of St. 1962, c. 583, is such as to provide no setting from which the suggested limitation may be implied. The act must be construed as an absolute prohibition of dumping in the area where the plaintiff's land is situated. As applied to that land, the question is whether the act is tantamount to a taking of property without due process of law.

While it is agreed that the plaintiff is put out of business as a dump operator, the record does not show that the land cannot be filled and put to other use. There has not, therefore, been a complete deprivation of property so as to be the equivalent of a taking without compensation. See *Reinman* v. *Little Rock,* 237 U. S. 171; *Miller* v. *Schoene,* 276 U. S. 272.

In so far as the plaintiff's business has been stopped, there is nothing in the meager facts to overcome the presumption of statutory validity. There is likewise nothing to demonstrate that this is a case where the Legislature is prevented from making a determination that circumstances have become such that a dump should no longer be operated in the area. See *Pendoley* v. *Ferreira, ante,* 309, 312; *Hadacheck* v. *Los Angeles,* 239 U. S. 394.

---

[1] In the title of the act the words appear in the opposite order.

The defendant concedes that St. 1962, c. 583, abrogates the permit granted by the health commissioner and the statutory assignment of the plaintiff's land as a dumping site in so far as they have not been exercised. These were not vested property rights immune from governmental action prospectively effective. The health commissioner's permit was expressly subject to revocation. The assignment of the land as a dumping site could be repealed or amended by a later statute. See *Calder* v. *Kurby*, 5 Gray, 597, 598; *Lowell* v. *Archambault*, 189 Mass. 70, 71, 72.

A final decree is to be entered declaring that St. 1962, c. 583, is not unconstitutional as applied to the plaintiff.

*So ordered.*